UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEROME SUEING,

                  Petitioner,              Case No. 1:22-cv-199

v.                                     Honorable Robert J. Jonker

NOAH NAGY,

                  Respondent.
_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jerome Sueing is presently on parole under the supervision of the Michigan Department of Corrections. Petitioner was incarcerated with at the G. Robert Cotton Correctional Facility in Jackson, Michigan, when he initiated this action. (*See* ECF No. 1, PageID.1, 25.) On September 3, 2015, following a jury trial in the Kent County Circuit Court, Petitioner was convicted of aggravated indecent exposure, in violation of Mich. Comp. Laws § 750.335a(2)(b), and indecent exposure by a sexually delinquent person, in violation of Mich. Comp. Laws § 750.335a(2)(c), in each of two criminal prosecutions that were tried together before a single jury. Petitioner was sentenced as a fourth habitual offender, Mich. Comp. Laws § 769.12, initially on September 28, 2015. Petitioner was resentenced twice as a result of his appeals—first on May 22, 2017, and finally on August 30, 2021. The court ultimately sentenced Petitioner to concurrent prison terms of 2 to 15 years on the aggravated indecent exposure counts and 1 day to life on the indecent exposure by a sexually delinquent person counts.

On March 7, 2022, Petitioner filed his habeas corpus petition raising four grounds for relief, as follows:

I.      The trial court violated [Petitioner's] right to due process—denied him his right to a fair trial by joining the unrelated cases of aggravated indecent exposure which each carried a second count of indecent exposure by a sexually delinquent person, and the join[d]er resulted in unfair prejudice.

II.     The trial court abused it[]s discretion and denied [Petitioner] his due process right to a fair trial by admitting evidence of past acts that should not have been admissible pursuant to MCR 404(b).

III.    [Petitioner] did not rec[ei]ve the adequate assistance of counsel in fulfillment of his constitutional rights.

IV.    [Petitioner] claims that, during opening statements, the prosecutor improperly referenced the testimony of a professor and a police officer regarding the 2003 incident at Kendall College. Specifically, [Petitioner] asserts that the prosecutor's comments violated his Sixth Amendment right to confrontation because neither the professor nor the police officer testified at trial. [Petitioner] also claims that defense counsel was ineffective for failing to move for a mistrial based on the prosecutor's opening statement. These comments were prejudicial to [Petitioner] and impaired his ability to have a fair trial. [Petitioner] further claims that defense counsel was ineffective for failing to request a "cautionary instruction" or a "missing witness instruction."

(Pet., ECF No. 1, PageID.10–12, 15, 17, 20.) Respondent asserts that Petitioner's grounds for relief are meritless.[1] (ECF No. 7.) For the following reasons, the Court concludes that Petitioner has

---

[1] Respondent also contends that Petitioner's third and fourth grounds for relief are partially unexhausted and partially procedurally defaulted. (ECF No. 7, PageID.99–100.) Respondent does recognize, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. MaCauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion

failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.     Factual Allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

> In lower court no. 15-000819-FH, [Petitioner] was charged with aggravated indecent exposure, MCL 750.335a(2)(b), and indecent exposure by a sexually delinquent person, MCL 750.335a(2)(c) in connection with an incident in which [Petitioner] exposed his penis and began masturbating while sitting at a table near a woman at the Grand Rapids Downtown Market on January 9, 2015. In lower court no. 15-000820-FH, [Petitioner] was charged with aggravated indecent exposure and indecent exposure by a sexually delinquent person in connection with an incident in which [Petitioner] exposed and then began "stroking" his penis while sitting next to a woman in a lobby at Kendall College of Art and Design in Grand Rapids on January 12, 2015.

*People v. Sueing*, No. 329961, 2017 WL 1034423, at *1 (Mich. Ct. App. Mar. 16, 2017), *vacated in part by People v. Sueing*, 923 N.W.2d 265 (Mich. 2019).

Jury selection for Petitioner's trial began on September 1, 2015. (Trial Tr. I, ECF No. 8-5.) Over the course of three days, the jury heard testimony from numerous witnesses, and the prosecution presented evidence of similar prior incidents. (Trial Tr. I, II, & III, ECF Nos. 8-5, 8-6, 8-7.) On September 3, 2015After only a little over an hour of deliberation, the jury reached a guilty verdict. (Trial Tr. III, ECF No. 8-7, PageID.353.) Petitioner appeared before the trial court for sentencing on September 28, 2015. (ECF No. 8-8.)

Petitioner, with the assistance of counsel, appealed his conviction and sentence to the Michigan Court of Appeals, raising the same four issues he raises in his habeas petition. The court

---

and procedural default, the Court finds that judicial economy counsels that the better approach is to go directly to a discussion of the merits of Petitioner's claims.

of appeals "vacate[d] [Petitioner's] convictions and sentences for aggravated indecent exposure, affirm[ed] his convictions for indecent exposure by a sexually delinquent person, but vacate[d] his sentences associated with these two convictions and remand[ed] so the trial court [could] resentence [Petitioner] consistent with MCL 750.335a(2)(c) to one day to life in prison." *Sueing*, 2017 WL 1034423, at *1. Petitioner was then resentenced by the trial court on May 22, 2017. (ECF No. 8-9.)

Subsequently, however, the Michigan Supreme Court vacated the part of the court of appeals' judgment that vacated Petitioner's sentences for indecent exposure by a sexually delinquent person. *See People v. Sueing*, 923 N.W.2d 265, 265 (Mich. 2019). The supreme court remanded the matter to the court of appeals to hold in abeyance "pending its decision in *People v. Arnold (On Remand)*."[2] *Id.* The supreme court directed the court of appeals to reconsider Petitioner's case in light of *Arnold* once *Arnold* was decided. *Id.* The supreme court further directed the court of appeals "to consider the challenge to the assessment of points under Offense Variable 13, MCL 777.43, which was raised by [Petitioner] but not addressed by that court during its initial review of this case." *Id.*

On remand, the court of appeals vacated Petitioner's sentences for indecent exposure by a sexually delinquent person and remanded the matter to the trial court for a second resentencing.

---

[2] In *Arnold*, the court of appeals concluded that "the sentencing guidelines provide another option or alternative, in addition to the sexual delinquency scheme, when sentencing an individual convicted of indecent exposure." *People v. Arnold*, 939 N.W.2d 690, 694 (Mich. Ct. App. 2019), *rev'd*, 973 N.W.2d 36 (Mich. 2021). Therefore, the court of appeals concluded that a trial court could sentence a defendant to either one day to life or to a term consistent with the advisory sentencing guidelines. *Id.* at 701–02. The Michigan Supreme Court subsequently reversed, holding that "the guidelines do not create an alternative sentence that can be imposed instead of the '1 day to life' sentence." *Arnold*, 973 N.W.2d at 38. The supreme court held, therefore, that "individuals convicted of an indecent-exposure offense . . . as sexually delinquent persons must be sentenced pursuant to the penalties prescribed in that statute." *Id.*

4

*People v. Sueing*, No. 329961, 2019 WL 6045563, at *1 (Mich. Ct. App. Nov. 14, 2019). Petitioner was ultimately resentenced on August 30, 2021. (ECF No. 8-10.) Petitioner's subsequent appeals to the court of appeals were dismissed pursuant to stipulations. (ECF Nos. 8-12, PageID.578; ECF No. 8-13, PageID.603; ECF No. 8-14, PageID.628.) This § 2254 petition followed.

## II.   AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the

merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

### A.  Ground I—Joinder

As his first ground for relief, Petitioner contends that his due process right to a fair trial was violated "by joining the unrelated cases of aggravated indecent exposure which each carried a second count of indecent exposure by a sexually delinquent person, and the join[d]er resulted in prejudice." (Pet., ECF No. 1, PageID.10.) According to Petitioner, he had a chance at a not guilty verdict for the second case because there was "reasonable doubt that [Petitioner] was the

7

perpetrator." (*Id.*, PageID.12.) He contends, however, that he "did not have a chance" at acquittal because the two cases were joined. (*Id.*)

The court of appeals rejected Petitioner's argument, concluding that the joinder of the two cases was proper under state law. *See Sueing*, 2017 WL 1034423, at *1–2. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). Thus, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Accordingly, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

The Supreme Court has recognized that "[i]mproper joinder does not, by itself, violate the [C]onstitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his . . . right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). The issue "is not whether the failure to sever counts for separate trials was a violation of a state rule of procedure, but whether the failure to sever denied the petitioner due process of law under the Fourteenth Amendment." *Davis v. Coyle,* 475 F.3d 761, 777 (6th Cir. 2007). To establish prejudice from joinder, a defendant must point to specific evidence that the joinder was prejudicial. *United States v. Saadey,* 393 F.3d 669, 678 (6th Cir. 2005). "[A]n unproven assertion is not compelling evidence of actual prejudice." *Id.* at 679. "[A] jury is presumed capable of considering each criminal count separately, and any prejudice may be cured by limiting instructions." *United States v. Cope,* 312 F.3d 757, 781 (6th Cir. 2002) (internal citations omitted). "[A] risk of undue prejudice exists whenever joinder of counts permits

introduction of evidence of other crimes that would otherwise be inadmissible." *Davis*, 475 F.3d at 777. Unless a habeas petitioner can show "evidence would have been inadmissible in a hypothetical separate trial . . . his claim fails." *LaMar v. Houk*, 798 F.3d 405, 428 (6th Cir. 2015).

Here, it was not fundamentally unfair to join the two criminal cases against Petitioner for a single trial. As discussed by the court of appeals, the two offenses were related because they were "acts in [Petitioner's] scheme of using unsuspecting young women, who were in a gathering area of a public place, to obtain sexual gratification." *Sueing*, 2017 WL 1034423, at *2. Moreover, the court of appeals noted, "evidence of each offense would have been admissible under MRE 404(b) in a trial on the other offense to prove [Petitioner's] identity and that he had a common scheme, plan, or system of doing the acts." *Id.* Consolidating the cases "reduced the drain on resources and offered convenience for the witnesses." *Id.* The court of appeals also noted that Petitioner was not entitled to separate juries for the purpose of deciding the issue of sexual delinquency, and that "[i]f separate juries had been used, there would have been a complete overlap in evidence." *Id.* at *2–3.

Petitioner, therefore, was not prejudiced by having a single jury hear all the charges against him. *See United States v. Jacobs,* 244 F.3d 503, 507 (6th Cir. 2001); *Krist v. Foltz,* 804 F.2d 944, 947–48 (6th Cir. 1986); *see also Taylor v. Lafler,* No. 09–10556, 2012 WL 933132, at *5 (E.D. Mich. Mar. 20, 2012) (concluding that the joinder of three cases for a single trial where the petitioner was charged with multiple counts of criminal sexual conduct in each case did not deprive the petitioner of a fair trial). Moreover, Petitioner was not entitled to separate trials simply because he may have had a better chance of acquittal in separate trials. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). The potential for prejudice was mitigated by the trial court's instructions to the jury. The trial court instructed the jury on each of the offenses, charged the jurors with considering

each crime separately, and noted that the jury could find Petitioner guilty or not guilty of any one of the counts. (Trial Tr. III, ECF No. 8-7, PageID.348–352.)

Petitioner has failed to demonstrate that the court of appeals' rejection of his due process claim regarding joinder was contrary to, or an unreasonable application of, clearly established federal law. As discussed above, Petitioner wholly fails to establish any prejudice resulting from the joinder of the charges. Petitioner, therefore, is not entitled to relief with respect to habeas ground I.

### B.     Ground II—Other Acts Evidence

In his second ground for relief, Petitioner contends that he was denied a fair trial because of the admission of evidence of past acts. (Pet., ECF No. 1, PageID.15.) Petitioner suggests that the admission of this evidence subjected him to "layer upon layer of prejudice." (*Id.*)

The court of appeals rejected Petitioner's argument, concluding that such evidence was properly admitted under state law and that it "was admissible to prove [Petitioner's] common scheme, plan, or system of doing an act pursuant to MRE 404(b)(1)." *Sueing*, 2017 WL 1034423, at *3. The court of appeals also noted that the evidence was "admissible to prove [Petitioner's] identity as the perpetrator of the charged offenses." *Id.* at *4. As the Supreme Court explained in *Estelle*, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." 502 U.S. at 67–68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. *See Lewis*, 497 U.S. at 780.

It is not inconceivable that evidence properly admitted under state law might still have the effect of rendering Petitioner's trial unfair. However, "state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (internal quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000); *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case establishing a due process right with regard to the specific kind of evidence at issue").

Here, Petitioner fails to identify any clearly established Supreme Court precedent that would preclude admission of the evidence at issue, regardless of whether it was covered by Rule 404(b). *See Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013) (concluding that even if the trial court violated Michigan Rule of Evidence 404(b), such "'garden-variety' character-evidence error does not 'cross the constitutional threshold' of due process"). Indeed, there is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of "other bad acts" evidence. In *Estelle v. McGuire*,

11

the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime. *Id.* at 75 n.5. While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms. The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

Because Petitioner has failed to demonstrate that the court of appeals' rejection of this claim is contrary to, or an unreasonable application of clearly established federal law, Petitioner is not entitled to relief on habeas ground II.

### C.    Habeas Ground III—Ineffective Assistance of Counsel

Petitioner next asserts that he "did not receive the adequate assistance of counsel in fulfillment of his constitutional rights." (Pet., ECF No. 1, PageID.17.) Specifically, Petitioner asserts that trial counsel was ineffective in five ways: (1) failing to object to the prosecutor's remarks during opening statements; (2) failing to recognize a conflict of interest; (3) failing to object "to the improper stop, arrest[, and] detention"; (4) failing to investigate and subpoena witnesses and evidence, including Petitioner's medical records, doctors, and family members; and (5) the trial court erred in denying Petitioner's request to discharge trial counsel. (*Id.*)

As an initial matter, Respondent contends that Petitioner's assertion that trial counsel was ineffective for not objecting to the prosecutor's remarks during opening statements is unexhausted and procedurally defaulted. (ECF No. 7, PageID.139–142.) Petitioner, however, did raise

counsel's failure to object in his Standard 4 brief. (ECF No. 8-11, PageID.496.) Moreover, as his fourth ground for habeas relief, Petitioner contends that the prosecutorial misconduct occurred during opening statements and that counsel was ineffective for failing to move for a mistrial or to request a cautionary instruction with respect to the prosecutor's statements. Because Petitioner's argument regarding counsel's failure to object closely mirrors his arguments raised in habeas ground IV, the Court will consider those arguments together in Part III.D, *infra*. The Court considers each of the four remaining subclaims of ineffective assistance in habeas ground III below.

### 1.      Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

13

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d), analysis of counsel's performance. In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised numerous ineffective assistance of counsel claims in his Standard 4 brief, and the court of appeals addressed them under the following standard:

> To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v. Uphaus (On Remand)*, 278 Mich. App. 174, 185; 748 N.W.2d 899 (2008). Because [Petitioner] did not move the trial court for a new trial or an evidentiary hearing, our review of [Petitioner's] ineffective assistance claim is limited to mistakes apparent from the record. *People v. Heft*, 299 Mich. App. 69, 80; 829 N.W.2d 266 (2012).

*Sueing*, 2017 WL 1034423, at *4. Although the court of appeals cited state court authority for the standard, the standard applied is identical to *Strickland*. Moreover, if one looks to *Uphaus* and the cases cited therein, the source of the standard is ultimately identified as *Strickland*. *See People v.*

*Toma*, 613 N.W.2d 694, 703 (Mich. 2000). Thus, there is no question that the court of appeals applied the correct standard.

The state court's application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

> [A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* [*v. Washington*, 466 U.S. 668 (1984),] as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, because the Michigan Court of Appeals applied the correct standard Petitioner can only overcome the deference afforded state court decisions if the determination of Petitioner's sufficiency is an unreasonable application of *Strickland* or if the state court's resolution was based on an unreasonable determination of the facts. 28 U.S.C. 2254(d). The Court,

therefore, will consider whether the court of appeals reasonably applied the standard for each of Petitioner's claims of ineffective assistance of counsel.

### 2.      Failure to Recognize Conflict of Interest

Petitioner suggests that he received ineffective assistance of trial counsel because "[a] conflict of interest existed between [Petitioner], his attorney, [and] the public defender's office." (Pet., ECF No. 1, PageID.17.) In his Standard 4 brief, Petitioner suggested that a conflict existed because trial counsel was employed by the public defender's office, and Petitioner had previous experienced breakdowns in communication with other public defenders who had been appointed to represent him in prior criminal proceedings. (ECF No. 8-11, PageID.503–507.)

The court of appeals rejected this claim, stating:

> On the first day of trial, [Petitioner] informed the trial court about two past conflicts that he had with lawyers from the public defender's office, and stated that he believed that, based on those past conflicts, defense counsel, who was employed by the public defender's office, should withdraw. However, [Petitioner] never offered the trial court any specific link between those past conflicts and defense counsel's representation of him. We view [Petitioner's] claim that defense counsel should have withdrawn because of past conflicts that he had with other attorneys at the public defender's office as nothing more than a claim that he lacked confidence in appointed counsel. Such an allegation is not good cause to appoint substitute counsel. See *People v. Traylor*, 245 Mich. App. 460, 463; 628 N.W.2d 120 (2001).

*Sueing*, 2017 WL 1034423, at *7.

For purposes of an ineffective assistance of counsel claim, prejudice is presumed if counsel is shown to have been burdened by an actual conflict of interest. *Strickland*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345–50 (1980)). However, even in the case of such a conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Sullivan*, 446 U.S. at 350).

Petitioner does not suggest that counsel actively represented conflicting interests. Thus, the Court construes his claim to be based on "actual conflict of interest [that] adversely affected his lawyer's performance." *Id.* The United States Court of Appeals for the Sixth Circuit has set forth the showing necessary to establish such a conflict:

> To find an actual conflict, we require petitioner to "point to specific instances in the record to suggest an actual conflict or impairment of [his] interests" and "demonstrate that the attorney made a choice between possible alternative courses of action" . . . . Counsel's choices between alternative courses is evidence of adverse effect only if it is not part of a legitimate strategy, "judged under the deferential review of counsel's performance prescribed in *Strickland*."

*McElrath v. Simpson*, 595 F.3d 624, 624-25 (6th Cir. 2010) (citations omitted).

Petitioner has not and cannot make this showing. Petitioner fails to point to specific instances that suggest a conflict and that counsel's choices were not part of a legitimate strategy. Instead, Petitioner merely speculates that his prior issues with other public defenders spilled over to trial counsel in this matter and made Petitioner not fully confident in counsel's ability to represent him well. As discussed by the court of appeals, this is insufficient to demonstrate the existence of an actual conflict of interest. Petitioner has not demonstrated that the court of appeals' rejection of this claim was contrary to, or an unreasonable application of, *Strickland*. Accordingly, he is not entitled to relief on this claim of ineffective assistance.

### 3.      Failure to Challenge Petitioner's Arrest

Third, Petitioner faults counsel for failing "to object to the improper stop, arrest[, and] detention." (Pet., ECF No. 1, PageID.17.) In his Standard 4 brief, Petitioner raised a Fourth Amendment claim and an accompanying ineffective assistance claim. (ECF No. 8-11, PageID.508–509.) The court of appeals rejected Petitioner's arguments, stating:

> [Petitioner] was arrested on January 15, 2015, after Sergeant Neil Gomez, who was driving in his personal car, saw a man in front of a restaurant who looked very similar to a suspect in a picture that Detective Josh Cornell had e-mailed to members of the Grand Rapids Police Department. Because Sergeant Gomez was in

his personal vehicle and was not in uniform, he called dispatch and requested that uniformed officers respond. Shortly thereafter, several police officers arrived and made contact with the man. Sergeant Gomez called Detective Cornell to inform him about the situation while another officer took the man into custody. The man turned out to be [Petitioner].

Detective Cornell, who was assigned to investigate the indecent exposures at the Downtown Market and Kendall College, testified that he sent an e-mail with three still pictures attached, two from the Downtown Market and one from Kendall College, to members of the Grand Rapids Police Department, including Sergeant Gomez and Officer John Wetzel. Detective Cornell believed that he attached the police reports to his e-mail. Sergeant Gomez testified that Detective Cornell's e-mail contained information in addition to the pictures, although he could not remember that information. But, according to Sergeant Gomez, it was "pretty functional" for an e-mail to explain "what's going on and what the picture's for." Officer Wetzel testified that, when he made contact with Sergeant Gomez, Sergeant Gomez pointed to a person and said the person was wanted for indecent exposure. Based on this testimony, an inference can be made that Detective Cornell's e-mail indicated that [Petitioner] was wanted for indecent exposure.

It is not clear or obvious that [Petitioner] was arrested without probable cause. *Carines*, 460 Mich at 763. Detective Cornell sent an e-mail, indicating that the person displayed in the attached pictures was wanted for indecent exposure. Sergeant Gomez testified that [Petitioner] was "almost to the T" the person in the picture. Officer Wetzel testified that [Petitioner] was wearing the same set of distinct clothes as the person in the picture. The facts and circumstances within the knowledge of these officers and of which the officers had reasonably trustworthy information was sufficient to warrant a person of reasonable caution to believe that an offense was committed and that [Petitioner] committed it. *Champion*, 452 Mich. at 115. [Petitioner's] argument that he was arrested without probable cause is without merit. . . .

Additionally, [Petitioner's] argument that defense counsel was ineffective for failing to challenge the validity of his arrest and for failing to move to suppress the pictures taken of him at the time of his arrest is without merit. Because [Petitioner] has not established that his arrest or the pictures taken of him at the time of his arrest violated his Fourth Amendment rights, any motion by defense counsel challenging the arrest or pictures would have been meritless. Defense counsel was not ineffective for failing to make a futile motion. *Fike*, 228 Mich. App. at 182.

*Sueing*, 2017 WL 1034423, at *7–8.

In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court stated: "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is

meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375. Petitioner does not address the court of appeals' resolution of his underlying Fourth Amendment claim in his § 2254 petition. Instead, Petitioner merely refers to his Standard 4 brief and the court of appeals' decision.

"An officer has probable cause to arrest a suspect when the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 620 (6th Cir. 2021) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "An objective, not a subjective, standard applies. The question is whether the observable circumstances justify an arrest; the officer's 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). As set forth by the court of appeals, Sergeant Gomez testified that he had seen pictures of the individual wanted for indecent exposure and that he observed Petitioner wearing the same set of "distinct clothes" as the individual in the pictures. *See Sueing*, 2017 WL 1034423, at *8. Petitioner has set forth nothing to refute these facts. Accordingly, there is nothing in the record before the Court that suggests that the court of appeals' resolution of Petitioner's Fourth Amendment claim was contrary to, or an unreasonable application of, clearly established federal law.

Moreover, while the court of appeals' determination of Petitioner's ineffective assistance claim relied upon state law, its determination is entirely consistent with *Strickland*. Any Fourth Amendment challenge that Petitioner claims his counsel failed to raise was meritless. As the Sixth Circuit has noted, "[o]mitting meritless arguments is neither professionally unreasonable nor

prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). Petitioner, therefore, has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim relating to counsel's failure to challenge Petitioner's arrest was contrary to, or an unreasonable application of, *Strickland*.

### 4.      Failure to Investigate and Subpoena Evidence and Witnesses

Next, Petitioner faults counsel for failing "to investigate [and] subpoena [Petitioner's] medical records, doctors or physicians, family members, e[tc]." (Pet., ECF No. 1, PageID.17.) With respect to the medical records, Petitioner claimed these records "would have shown that he suffered from an inguinal hernia at the time of the charged offenses." *Sueing*, 2017 WL 1034423, at *5. The court of appeals rejected Petitioner's claim, noting that nothing in the record substantiated Petitioner's assertions regarding a hernia. *Id.* The court of appeals also noted that "[n]othing in the record indicates how any of [Petitioner's] medical providers or family members would have testified had they been called as witnesses." *Id.*

Petitioner entirely fails to explain how the court of appeals' analysis is contrary to, or an unreasonable application of, *Strickland*. Indeed, he simply presents the same argument to this Court that he presented to the Michigan Court of Appeals. He offers no ground to overcome the deference this Court must give to the court of appeals' resolution of this ineffective assistance claim. Petitioner, therefore, is not entitled to habeas relief for this ground of alleged ineffective assistance.

### 5.      Denial of Request to Discharge Counsel

As his last subclaim, Petitioner suggests that the trial court erred in denying his request to discharge trial counsel. (Pet., ECF No. 1, PageID.17.) As an initial matter, this does not pertain to counsel's ineffectiveness, but Petitioner has, nevertheless, asserted this argument as part of habeas ground III. The court of appeals rejected Petitioner's argument, stating:

> Also, on the first day of trial, [Petitioner] informed the trial court that defense counsel had failed to file motions for him. He mentioned two specific motions: one to challenge the jury pool in Kent County and one to get him moved from the jail so that he could get medical care. [Petitioner] makes no argument that either of these motions would have had any merit. Defense counsel's failure to file meritless motions does not establish good cause to appoint substitute counsel. See *id.* Moreover, [Petitioner] did not complain about defense counsel until right before trial was scheduled to start. At that point, substitution of counsel would have unreasonably delayed the judicial process. See *Strickland*, 293 Mich. App. at 399. Because [Petitioner] did not show good cause for appointment of substitute counsel, and because substitution of counsel would have delayed the judicial process, the trial court did not abuse its discretion by denying [Petitioner's] request to appoint substitute counsel.

*Sueing*, 2017 WL 1034423, at *6–7.

Ultimately, on habeas review, whether or not there was a complete breakdown in the attorney-client relationship is immaterial because clearly established federal law does not tie substitution of counsel to such a breakdown. Indeed, many of the factors that courts look to when evaluating whether or not to substitute counsel are derived from the opinions of lower federal courts[3] or even the United States Supreme Court interpreting the Federal Rules of Criminal Procedure[4] or federal statutes.[5]

---

[3] For example, the Sixth Circuit holds an indigent defendant "must show good cause such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney in order to warrant substitution" of counsel. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985); *accord Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011).

[4] For example, cases interpreting Federal Rule of Criminal Procedure 44 regarding the court's obligation to inquire into potential conflicts that might exist when there is joint representation. *See, e.g.*, *Wheat v. United States*, 486 U.S. 153, 161 (1988); *Mickens v. Taylor*, 535 U.S. 162 (2002).

[5] For example, in *Martel v. Clair*, 565 U.S. 648 (2012), the Supreme Court considered the appropriate standard for permitting the substitution of counsel appointed for capital defendants and habeas petitioners pursuant to 18 U.S.C. § 3599. The Court settled on the "interests of justice" standard employed for substitution requests in non-capital cases under 18 U.S.C. § 3006A. The Court described the context-specific inquiry attendant to that standard by reference to the factors that courts might consider: "the timeliness of the motion; the adequacy of the district court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel*, 565 U.S. at 663. The Sixth Circuit Court of Appeals concluded that *Martel* "centered on the federal statutory standard for reviewing

United States Supreme Court authority regarding the ***federal constitutional*** requirement to provide substitute appointed counsel is scant. The Sixth Amendment provides a criminal defendant with the right "to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. One element of that right is the right to have counsel of one's choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006). However, the right to counsel of choice is not without limits. *Id.* "[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151 (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)). "[T]hose who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624.

As the Sixth Circuit explained in *Peterson v. Smith*, 510 F. App'x 356 (6th Cir. 2013):

The Sixth Amendment right to counsel does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Although Peterson relies on a Ninth Circuit decision finding that being forced to proceed with appointed counsel despite the complete breakdown of the attorney-client relationship violated the right to counsel, the en banc court vacated that decision precisely because the state court decision denying new counsel was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *See Plumlee v. Masto*, 512 F.3d 1204 (9th Cir. 2008) (en banc), *rev'g Plumlee v. Sue del Papa*, 426 F.3d 1095 (9th Cir. 2005).

Peterson further argues that the trial court failed to make the inquiry this court would require of a district court considering a defendant's request for substitute counsel. *See United States v. Mooneyham*, 473 F.3d 280, 291 (6th Cir.2007). Not only does it appear that the trial court made sufficient inquiry, the failure to do so could not be the basis for relief under AEDPA because such inquiry is not required by clearly established Supreme Court precedent. *See Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012) (per curiam) (finding requirement that court inquire into good cause was not clearly established Federal law); *James v. Brigano*, 470 F.3d 636, 643 (6th Cir.2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law). Of course, that would not preclude petitioner from seeking relief on the grounds that the refusal to appoint new counsel

substitution motions, and not the Sixth Amendment." *Wallace v. Chapman*, No. 19-1374, 2019 WL 4943757, at *3 n.1 (6th Cir. Sept. 23, 2019).

resulted in a denial of effective assistance of counsel at trial. *Brooks*, 454 F. App'x
at 452 (relying on *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617,
624 (1989) ("those who do not have the means to hire their own lawyers have no
cognizable complaint so long as they are adequately represented by attorneys
appointed by the courts")).

*Peterson*, 510 F. App'x at 366–67; *see also Wallace*, 2019 WL 4943757, at *3 n.1 (6th Cir. Sept.

23, 2019) (stating that the petitioner "could prevail on his substitution-of-counsel claim only by

showing 'that the refusal to appoint new counsel resulted in a denial of effective assistance of

counsel at trial'" (quoting *Peterson*, 510 F. App'x at 366–67)).

As set forth in his Standard 4 brief, Petitioner's entire "substitution" argument is focused

on demonstrating a breakdown in his relationship with counsel, as well as his belief that counsel

was laboring under a conflict of interest because of counsel's employment with the public

defender's office and Petitioner's assertion that he had experienced communication issues with

other public defenders in the past. (ECF No. 8-11, PageID.502.) Petitioner does not focus on the

adequacy of the representation counsel provided. Moreover, as discussed *supra*, as well as *infra* in

Part III.D, Petitioner has failed to demonstrate that counsel rendered ineffective assistance in any

way. Accordingly, Petitioner has failed to demonstrate that the court of appeals' rejection of his

substitution request was contrary to, or an unreasonable application of, clearly established federal

law. Petitioner, therefore, is not entitled to relief on this claim.

### D.    Ground IV—Prosecutor's Remarks During Opening Statements

As his final ground for relief, Petitioner contends that the prosecutor violated his Sixth

Amendment right to confrontation because, during opening statements, the prosecutor improperly

referenced testimony from a professor and a police officer regarding an incident that occurred at

Kendall College in 2003. (Pet., ECF No. 1, PageID.20.) Petitioner suggests these remarks violated

his right to confront the witnesses against him because neither the professor nor the officer

testified. (*Id.*) Petitioner claims further that counsel was ineffective for failing to move for a

mistral and for failing to request a "cautionary instruction" or a "missing witness instruction." (*Id.*) Moreover, as noted *supra*, Petitioner suggests that counsel was ineffective for not contemporaneously objecting to the remarks. (*Id.*, PageID.17.)

> The remarks to which Petitioner takes issue are as follows:

> Again, a year earlier than that, there was also an incident that occurred at Kendall College again where there was an allegation that an individual was standing in the doorway and masturbating in front of some of the students. You will hear from a professor whose classroom it occurred in front of—it occurred in front of. And he was able to identify the person who he saw standing outside the classroom, although he did not see the actual exposure and the masturbation. He was able to identify the person, and then the person that was arrested by the Grand Rapids Police that day was the defendant, Jerome Sueing, who was present there around the college at the time. And when the police, in particular Officer Matt Veldman, had contact with him, the defendant's penis—his penis was hanging out and exposed.

(Trial Tr. I, ECF No. 8-5, PageID.283.)

> The Sixth Amendment guarantees defendants the right to confront witnesses against them. The Sixth Amendment, however, does not require the prosecution to call all witnesses who are competent to testify. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). The right to confrontation does not impose a duty on the prosecution to call a particular witness. *United States v. Bryant,* 461 F.2d 912, 916 (6th Cir. 1972); *see also Turnbough v. Wyrick,* 420 F. Supp. 588, 592 (E.D. Mo. 1976) (right to confrontation not denied by state's failure to call victim as a witness). Stated differently, the Confrontation Clause "is not a guarantee that the prosecution will call all the witnesses it has against the defendant." *United States v. Morgan,* 757 F.2d 1074, 1076 (10th Cir. 1985). In *Cooper v. California,* 386 U.S. 58, 62, n. 2 (1967), the Supreme Court found a habeas petitioner's contention that he was deprived of his right to confrontation because the state did not produce an informant to testify against him to be "absolutely devoid of merit." *Id.* Therefore, the Sixth Amendment right to confrontation "does not come into play where a potential witness neither testifies nor provides evidence at trial." *United States v. Porter,* 764 F. 2d 1, 9 (1st

Cir. 1985) (internal citations omitted). Moreover, "[n]ot every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he or she expects to introduce, and the actual presentation constitutes a violation of the right to confrontation or reversible error, when a proper limiting instruction is given." *Redding v. Horton*, No. 19-13599, 2021 WL 1720899, at *6 (E.D. Mich. Apr. 30, 2021) (citing *Frazier v. Cupp*, 394 U.S. 731, 736 (1969)).

Furthermore, to be entitled to habeas relief on the basis of prosecutorial misconduct, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The Court has emphasized a series of factors to be evaluated when making this determination: (1) whether the comments were isolated or pervasive; (2) whether the comments were deliberately or accidentally put before the jury; (3) the degree to which the remarks had a tendency to mislead and prejudice the defendant; (4) whether the prosecutor manipulated or misstated the evidence; (5) the strength of the overall proof establishing guilt; (6) whether the remarks were objected to by counsel; and (7) whether a curative instruction was given by the court. *See id.* at 182–83; *United States v. Young*, 470 U.S. 1, 12–13 (1985); *Donnelly*, 416 U.S. at 646–47. The touchstone of this analysis "is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In rejecting Petitioner's claim, the court of appeals stated:

There is no merit to [Petitioner's] argument. The United States Supreme Court's decision in *Frazier v Cupp*, 394 U.S. 731, 735; 89 S Ct 1420; 22 L. Ed. 2d 684 (1969), instructs that under the circumstances of the present case, when the only mention of testimony from the professor and the police officer occurred during the prosecutor's opening statement, when the trial court instructed the jury that it must decide the case based on the evidence and that opening statements were not evidence, and when the 2003 incident at Kendall College was not a vitally important part of the prosecutor's case, the prosecutor's statement did not violate

[Petitioner's] confrontation rights. [Petitioner] also claims that defense counsel was ineffective for failing to move for a mistrial based on the prosecutor's opening statement. "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v. Schaw*, 288 Mich. App. 231, 236; 791 N.W.2d 743 (2010) (quotation marks and citation omitted). A mistrial is only appropriate when the prejudicial effect of the error cannot be removed in any other way. *Horn*, 279 Mich. App. at 36. The trial court instructed the jury that it had to decide the case based on the evidence, and that opening statements were not evidence. These instructions were sufficient to cure any prejudice that resulted from the prosecutor's mention of the 2003 incident at Kendall College. See *Frazier*, 394 U.S. at 735; *People v. Abraham*, 256 Mich. App. 265, 279; 662 N.W.2d 836 (2003). Because the prejudicial effect of the error was removed by the trial court's instructions, any motion for a mistrial would have been meritless. Defense counsel was not ineffective for failing to make a futile motion. *People v. Fike*, 228 Mich. App. 178, 182; 577 N.W.2d 903 (1998).

[Petitioner] further claims that defense counsel was ineffective for failing to request a cautionary instruction or a missing witness instruction. Because any instruction specific to the 2003 incident at Kendall College would have reminded the jury of the incident, defense counsel may have decided it was best to forego any instruction specific to the incident, especially when the jury was instructed that opening statements were not evidence. [Petitioner] has failed to overcome the strong presumption that defense counsel engaged in sound trial strategy.

[Petitioner] also argues that the prosecutor's statement constituted intentional misconduct, requiring his convictions to be reversed, because the prosecutor knew or should have known that no evidence of the Kendall College incident was admissible when the prosecutor had not located any of the female students in the classroom. Because [Petitioner] raised no claim of prosecutorial misconduct at trial, we review [Petitioner's] claim for plain error affecting substantial rights, which requires a showing that the misconduct prejudiced [Petitioner], i.e., affected the outcome of the proceedings. *Carines*, 460 Mich. at 763. Regardless whether the prosecutor knew or should have known that evidence of the Kendall College incident was inadmissible, the prosecutor's mention of the incident in her opening statement did not affect the outcome of the proceedings. There was no other mention of the incident, and the trial court instructed the jury that it must decide the case based on the evidence and that opening statements were not evidence. Instructions are presumed to cure most errors, and a jury is presumed to follow its instructions. *Abraham*, 256 Mich. App. at 279.

*Sueing*, 2017 WL 1034423, at *5–6.

The court of appeals clearly applied the constitutional standards set forth above, and in his habeas petition, Petitioner merely relies upon the arguments already rejected by the court of appeals to support his request for relief. Pursuant to *Frazier*, no Confrontation Clause violation

occurred from the prosecutor's mention of testimony from a Kendall College professor regarding a 2003 incident. Prior to opening statements, the trial court explicitly advised the jury that opening "statements are not evidence." (Trial Tr. I, ECF No. 8-5, PageID.277.) The court also told the jury that it "must base [its] verdict only on the evidence." (*Id.*, PageID.278.) The trial court provided similar instructions at the close of trial. (Trial Tr. III, ECF No. 8-7, PageID.348–349.) Moreover, Petitioner has not demonstrated that the prosecutor's comments during opening statements "so infected the trial with unfairness" that Petitioner was denied due process. Thus, any variance between the prosecutor's opening statement and the evidence introduced during trial did not prejudice Petitioner or violate his confrontation rights, in light of the court's instructions to the jury. *See United States v. Campbell*, 317 F.3d 597, 606–07 (6th Cir. 2003).

Likewise, the court of appeals' rejection of Petitioner's accompanying ineffective assistance claim was consistent with clearly established federal law. As noted by the court of appeals, counsel was not ineffective for making a futile motion requesting a mistrial, and counsel reasonably chose to forego any request for further jury instructions in order to not remind the jury of the 2003 incident at Kendall College. *See Sueing*, 2017 WL 1034423, at *5–6. For those same reasons, it would have been futile for counsel to raise any contemporaneous objections to the prosecutor's comments during opening statements. As noted above, "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley*, 706 F.3d at 752; *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim.").

In sum, Petitioner has failed to demonstrate that the court of appeals' determinations that there was no confrontation issue or prosecutorial misconduct and, further, that counsel was not ineffective for failing to object, move for a mistrial, or request further jury instructions were

contrary to, or unreasonable applications of, clearly established federal law. Petitioner, therefore, is not entitled to relief on habeas ground IV.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal

would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment denying the petition and an order denying a certificate of appealability.


Dated:      August 25, 2023                            /s/ Robert J. Jonker
                                                        Robert J. Jonker
                                                        United States District Judge